[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 5, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-12338
Non-Argument Calendar

_____

D. C. Docket No. 04-00569-CR-03-TWT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HARRY BARNETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 5, 2007)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Harry Barnett appeals the district court's refusal to allow him to withdraw

his plea of guilty to one count of conspiracy to commit bank fraud, file false credit applications and receive a commission or gifts for procuring loans, a violation of 18 U.S.C. §§ 1344, 1014 and 215(a), all in violation of 18 U.S.C. § 371, and one count of filing false credit applications in violation of 18 U.S.C. §§ 1014 and 2. Barnett also appeals the sentence of 15 months in prison which the court imposed following his plea, on the grounds that he should have been granted a four-level downward adjustment for his minimal role in the offense and the court should have considered a non-guideline sentence.

We find that the district court did not abuse its discretion when it refused to allow Barnett to revoke the guilty plea he made knowingly and voluntarily. Further, the plea agreement in which he agreed to waive the right to appeal his sentence prevents us from considering any change to his sentence. We AFFIRM.

## I. BACKGROUND

Prior to entering a plea, Barnett signed a negotiated plea agreement with the government in which he admitted that he pled guilty because he was in fact guilty of the crimes with which he was charged. In the agreement, Barnett and the government agreed that the intended loss of the relevant conduct attributable to Barnett was between $200,000 and $400,000. In return for Barnett's plea, the government promised Barnett that it would dismiss all other charges against him

2

and, at sentencing, would recommend that Barnett receive a two-level downward departure for acceptance of responsibility and a two-level downward adjustment for his minor role in the offense.  The government also promised that it would recommend that Barnett be sentenced at the low end of the applicable guideline range.  The plea agreement also included a provision in which Barnett waived his right to directly appeal or collaterally attack his sentence to the maximum extent permitted by federal law, unless the court departed upwardly from the guidelines or the government appealed the sentence.

At the plea hearing, Barnett told the district judge that he was willing to relinquish his right to trial.  The government then presented the plea agreement and recited its terms for the record, including the provision in which Barnett agreed to waive his right to appeal his sentence.  The district judge then questioned Barnett, under oath.  Barnett said that he had not been threatened to plead guilty, that no one had made any promises to him that were not evidenced in the plea agreement, and that no one had made any promises as to the terms of his actual sentence.  The district judge explicitly asked Barnett about the appeal waiver provision and he responded that his waiver was given freely and voluntarily, and that he understood that he was waiving his right to appeal his sentence, unless the court issued an upward departure from the guidelines or the government appealed.  Barnett

3

answered that he understood that he would be bound by the plea agreement and would have no right to withdraw it, even if the sentence was more severe than he expected or if the court declined to adopt the sentencing recommendations in the plea agreement. Barnett also agreed with the facts proffered by the government, and affirmed that he was pleading guilty because he was, in fact, guilty. The district judge commented that he had observed Barnett during the plea hearing and found that Barnett had entered his plea "free of any coercive influence of any kind" and "voluntarily [] with full knowledge of the charges against him and the consequences of his plea of guilty." R4 at 24.

The probation officer adopted the terms of the plea agreement. He calculated Barnett's sentence, beginning with a base offense level of 6, and adding 12 levels because the amount of loss exceeded $200,000, but was less than $400,000. After reducing the offense level by a three-point downward adjustment for acceptance of responsibility and a two-point reduction for Barnett's minor role in the enterprise, the probation officer calculated an adjusted offense level of 13. The probation officer determined that Barnett had a criminal history score of II, resulting in a guideline range of imprisonment of 15 to 21 months.

On 2 April 2006, two days before his sentencing hearing was scheduled, Barnett filed a motion to withdraw his guilty plea, maintaining that he never

knowingly performed any act in furtherance of the conspiracy. Barnett claimed that he decided to plead guilty because he could not confirm contradictory statements made by a co-defendant and was, therefore, afraid that he was unprepared for trial. Barnett also argued that he felt pressured by the government and his family because the government would not consider a plea agreement for his son, who had already made up his mind to plead guilty, unless Barnett also pled guilty. Barnett claimed that if he was allowed to withdraw his plea and proceed to trial, he would produce testimony that would indicate that he had no knowledge of the conspiracy.

The district court considered Barnett's motion before beginning the sentencing hearing. In response to the motion, the government argued that Barnett's motive for seeking to withdraw his plea was his desire to avoid prison. It maintained that the motion was filed over five months after the plea and only two days before sentencing, and that his attorney had offered to withdraw the motion if the government would agree to a sentence that did not involve any incarceration.

The district judge denied Barnett's motion to withdraw his plea. He noted that it had reviewed the plea transcript, and that Barnett's plea was accepted based on his statements under oath at the hearing and not on any statements by one of his

5

co-defendants.  He commented that Barnett's "change [of] mind and [desire] to go to trial [was] not sufficient legally . . . to allow him to withdraw his guilty plea." R3 at 27.  Referencing United States v. Buckles, 843 F.2d 469 (11th Cir. 1988), the district judge then reviewed the factors and the totality of the circumstances to determine whether or not Barnett had presented a "fair and just reason" to withdraw his plea.  Id. at 24, 27-29.  The district judge found that Barnett received "vigorous assistance of counsel"; that Barnett knowingly and voluntarily entered a plea of guilty because he thought [it] in his best interest; that judicial resources would not be conserved by allowing Barnett to withdraw his guilty plea just before his sentencing and would require the expenditure of additional resources; that the government would be prejudiced by allowing Barnett to withdraw his guilty plea; and that Barnett was not unfamiliar with the guilty plea process as he was both a former attorney who was trained in the law and had previously pled guilty to prior convictions.  Id. at 27-29.

Barnett objected to the probation officer's characterization of his role in the offense, and maintained that his conduct relative to the other participants should have merited a four-level minimal participation reduction.  The district judge overruled Barnett's request, and assigned a two-level downward adjustment.  The district court reasoned that Barnett was being held responsible only for the lines of

credit with which he was directly involved and not for the larger conspiracy, and that he was the least culpable of the individuals involved with those lines of credit but "not so minimal as to entitle him to a four-level downward enhancement." Id. at 74-75. The district court also overruled all of Barnett's other objections to the presentence investigation report, and calculated a sentence within the recommended guideline range. Barnett requested consideration of a sentence below the guidelines range, based on his cooperation with the government in another investigation and his age. The district court, however, denied a downward departure and imposed a sentence at the low end of the guidelines range. Barnett was then sentenced to serve 15 months in prison, ordered to pay $288,297.86 in restitution jointly and severally, and placed on a term of three years of supervised release.

## II. DISCUSSION

A. <u>Withdrawal of the guilty plea</u>

Barnett argues on appeal that the court erred in denying his motion to withdraw his guilty plea because he did not knowingly engage in criminal activity and his plea was involuntary. He claims that from the time he was charged, he has maintained that he did not knowingly or intentionally file fraudulent documents in furtherance of the criminal scheme. Barnett posits that he pled guilty to a crime he

7

did not commit because his co-defendant son wanted to avoid trial and the government made the specific offer contingent on acceptance by both Barnett and his son. If he was permitted to withdraw his plea, Barnett would seek to introduce a statement by a co-defendant, unverifiable at the time Barnett entered his plea, that would question whether Barnett had knowledge of the plan.

We review the district court's denial of a motion to withdraw a guilty plea for an abuse of discretion, reversing only if the decision was arbitrary or unreasonable. United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir.) (per curiam), cert. denied, ___ U.S. ___, 127 S. Ct. 457 (2006) (citations omitted).

After the district court has accepted a guilty plea but before the sentence is imposed, a defendant may withdraw the plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). To determine whether the defendant has provided a "'fair and just reason'" to withdraw the plea, the district court "may consider the totality of the circumstances surrounding the plea." Buckles, 843 F.2d at 471-72 (citation omitted). Factors to be considered include "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Id. at 472 (citations omitted).

8

Although a district court has the discretion to evaluate "[t]he good faith, credibility and weight of a defendant's assertions," id. at 471-72, in support of a motion to withdraw a plea, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true." United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) .

A review of the record indicates that the district court was not acting arbitrarily or unreasonably when it refused to allow Barnett to withdraw his guilty plea. The court provided a lengthy examination of the Buckles factors and found that the totality of the circumstances did not suggest that Barnett had a "fair and just reason" for seeking a withdraw. Because the record supports the district court's findings on the Buckles factors, the district court did not err in denying Barnett's request to withdraw his guilty plea.

B. Appeal waiver

Barnett next challenges his sentence, alleging that the court erred by denying his request for a four-level downward adjustment for a minimal role in the offense and by not considering a non-guideline sentence.

We will enforce an appeal waiver "if the government demonstrates *either*: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise

understood the full significance of the waiver." United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir.) (per curiam), cert. denied, 544 U.S. 1041, 125 S. Ct. 2279 (2005).

During the plea proceedings, the district court specifically questioned Barnett about the provision in the plea agreement in which he agreed to give up his right to appeal his sentence unless the court awarded an upward departure from the guidelines or the government appealed the sentence. Because Barnett was questioned specifically about the waiver, and demonstrated that he knowingly and voluntarily agreed to it, we will enforce the waiver. The language of the provision indicates two exceptions to the waiver which would allow Barnett to challenge his sentence: (1) the district court's issuance of an upward departure or (2) the government's appeal challenging his sentence. Neither exception applies here, and we will not consider whether Barnett should have been awarded a four-level minimal role reduction or a non-guideline sentence.

## III. CONCLUSION

The district court did not abuse its discretion when it ruled that Barnett had failed to present a "fair and just reason" for seeking to withdraw his guilty plea. Because the district court also made a determination that Barnett knowingly and voluntarily waived his right to appeal his sentence, we will not review the merits of

his challenges to his sentence. The district court's denial of Barnett's motion to withdraw his guilty plea and Barnett's sentence are

**AFFIRMED**.